IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS COURTNEY CLICK,

     Plaintiff,

vs.                                         1:21-cv-00266-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Thomas Courtney Click's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 22), which was fully briefed on March 31, 2022. *See* Docs. 26–28. The parties consented to my entering final judgment in this case. Docs. 30–32. Having meticulously reviewed the entire record and being fully advised in the premises, I find that Mr. Click's motion is not well-taken, and it will be DENIED.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III.     Background and Procedural History

Mr. Click was born in 1959, graduated from college, and worked as a software app developer and a college professor of computer science.  AR 291, 338, 775.[4]  Mr. Click filed an application for Disability Insurance Benefits ("DIB") on November 12, 2015—alleging disability

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 14-1 through 14-9 and Document 19 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

since April 15, 2015,[5] due to bipolar disorder and migraines.  AR 291–92, 337.  The Social

Security Administration ("SSA") denied his claim initially on January 11, 2016.  AR 143–46.

The SSA denied his claim on reconsideration on September 9, 2016.  AR 150–55.  Mr. Click

requested a hearing before an ALJ.  AR 158–59.  On April 18, 2018, ALJ Stephen Gontis held a

hearing.  AR 38–77.  ALJ Gontis issued his first unfavorable decision on October 17, 2018.  AR

111–37.  Mr. Click requested that the Appeals Council review the ALJ's unfavorable decision.

AR 221.  On July 27, 2019, the Appeals Council remanded the case to the ALJ for a more

comprehensive discussion of the impact of Mr. Click's mental limitations on his RFC.  AR 138–

41.  On February 14, 2020, ALJ Gontis held a second hearing.  AR 751–80.  On May 12, 2020,

ALJ Gontis issued his second unfavorable decision.  AR 7–32.

The ALJ found that Mr. Click met the insured status requirements of the Social Security

Act through December 31, 2015.  AR 12.  At step one, the ALJ found that Mr. Click had not

engaged in substantial, gainful activity since April 15, 2015, his alleged onset date.  AR 13.  At

step two, the ALJ found that Mr. Click had the following severe impairments:  bipolar disorder,

anxiety related disorder, migraines, degenerative disc disease of the lumbar spine, and right

acromioclavicular arthropathy.  *Id.*

At step three, the ALJ found that none of Mr. Click's impairments, alone or in

combination, met or medically equaled a Listing.  AR 13–15.  Because the ALJ found that none

of the impairments met a Listing, the ALJ assessed Mr. Click's RFC.  AR 15–23.  The ALJ

found Mr. Click had the RFC to

---

[5] Mr. Click alleged he was disabled from April 15, 2015 until August 18, 2017, when he returned to work.  AR 18, 757.  This is known as a closed period of disability.  A closed period of disability arises when the impairment(s) prevent substantial gainful activity for at least twelve continuous months, and the disability ceases before the date the claim is adjudicated.  *See* POMS DI 25510.010 (A)(2).

perform medium work as defined in 20 CFR 404.1567(c) except he could lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently; and sit for 6 hours, stand for 6 hours, and walk for 6 hours during an 8 hour work day. He could occasionally reach overhead with the right (dominant) upper extremity and frequently reach in all other directions with the right upper extremity. The claimant could never climb ladders, ropes, or scaffolds. The claimant could never work at unprotected heights or around dangerous moving mechanical parts. The claimant could perform more than simple but less than complex tasks consistent with semi-skilled work. The claimant could interact with supervisors frequently and with coworkers and the public occasionally. The claimant could tolerate few changes in a routine work setting. Time off task could be accommodated by normal breaks. He could perform no more than frequent (rather than constant) use of a computer due to aggravation of migraines.

AR 15–16.

At step four, the ALJ found that Mr. Click could not perform any of his past relevant work as a college professor or as a software app developer. AR 23–24. The ALJ found Mr. Click not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as cook helper, coffee maker, production helper, and laundry laborer. AR 24–25.

On June 5, 2020, Mr. Click requested that the Appeals Council review the ALJ's second unfavorable decision. AR 33–35. On January 28, 2021, the Appeals Council denied this request for review. AR 1–6. Mr. Click timely filed his appeal to this Court on March 25, 2021.[6] Doc. 1.

## IV.    Mr. Click's Claims

Mr. Click raises two main arguments for remanding this case:  (1) the ALJ erred by failing to account for all the limitations found by state agency non-examiner Dr. Ryan Mendoza; and (2) the ALJ erred by failing to properly weigh the opinion of consultative examiner Dr. Robert Krueger.  Doc. 22 at 2, 5–26.  The Commissioner argues that the ALJ properly evaluated

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

the opinions of both Dr. Mendoza and Dr. Krueger, and that the ALJ's decision is supported by substantial evidence.  Doc. 26 at 7–23.  The Court agrees with the Commissioner and will DENY Mr. Click's motion.

**V.    Analysis**

**A.  The ALJ did not err in evaluating the opinion of Dr. Mendoza.**

Mr. Click argues that the ALJ erred by failing to account for all the limitations found by state-agency non-examining psychologist Dr. Ryan Mendoza.  Doc. 22 at 5.  He argues that the ALJ impermissibly picked and chose among the moderate limitations in Dr. Mendoza's opinion, without explaining his reasoning for omitting some of these limitations.  *Id.*  The Commissioner asserts that the ALJ's RFC is generally consistent with the moderate limitations in Dr. Mendoza's opinion.  Doc. 26 at 13–18.  The Commissioner also argues that the ALJ's failure to adopt or explain why he rejected Dr. Mendoza's opinion that he could only have "occasional" interactions with supervisors is harmless error.  The Court agrees with the Commissioner.

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, at *7.  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required").  Nevertheless, "[a]n ALJ is not entitled to

pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). "It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161.

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

In evaluating a doctor's Mental Residual Functional Capacity Assessment ("MRFCA"), an ALJ is required to consider and discuss both Section I and Section III findings.[7] As the

---

[7] Mental Residual Functional Capacity Assessment ("MRFCA") forms are completed by psychological consultants through the SSA's Electronic Claims Analysis Tool (eCAT). Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and the courts have continued to refer to the checkbox portion of each MRFCA as "Section I," and the "narrative" portion(s) as "Section III." In addition, the instructions contained in POMS DI 24510.060-65 on how to complete SSA-4734-F4-SUP still apply to the eCAT version of the form.

Honorable Stephan M. Vidmar explained, the Program Operations Manual System ("POMS"), regulations, and case law require the ALJ to address all of a doctor's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–66 (D.N.M. 2016).[8] An ALJ may rely exclusively on the Section III findings only if the "Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished). The ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished). If a doctor's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x

---

[8] This District is split on its interpretation of *Smith v. Colvin,* 821 F.3d 1264 (10th Cir. 2016) and whether that case held that an ALJ need not consider moderate limitations noted in Section I of the MRFCA. *Compare Silva v. Colvin*, 203 F. Supp. 3d 1153, 1163 n.4 (D.N.M. 2016):

> Rather than overruling *Haga* and *Frantz* (by holding that ALJs may ignore a doctor's Section I findings), the Court reads *Smith* as addressing moderate limitations that may be adequately accounted for in an ALJ's RFC limitation to unskilled (or simple) work. *Smith*, 821 F.3d at 1268–69 (holding that the ALJ's RFC assessment adequately accounted for the doctor's assessment of certain moderate functional limitations). In other words, the Court interprets *Smith* as being more about unskilled work, and less about Section I versus Section III findings.

*with Rush v. Saul*, 389 F. Supp. 3d 957, 969 (D.N.M. 2019):

> Based on *Smith*, the Court rejects Ms. Rush's argument that, once the ALJ gave great weight to Dr. Walker's opinion, the ALJ was required to either adopt Dr. Walker's Section I moderate limitations or, for each moderate limitation, explain why he did not adopt that limitation. *Smith* mandates affirmance here because the doctor's narrative RFC and the ALJ's RFC [found in Section III] are consistent.

616, 619 (10th Cir. 2015) (unpublished); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[Section I] observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored.  True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.").

Under *Haga* and *Frantz*, the ALJ has a duty to explain why he adopted some of Dr. Mendoza's limitations while rejecting others.  When an ALJ relies solely on a doctor's Section III narrative, this Court must analyze whether the Section III narrative "adequately encapsulates" the moderate limitations in Section I of the doctor's opinion.  *See Carver*, 600 F. App'x at 619.  In other words, the Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Mendoza in the RFC assessment.  If not, the Court must determine whether the ALJ adequately explained why he rejected the missing limitations.

In Section I of the MRFCA, Dr. Mendoza found Mr. Click had the following moderate limitations:

### Sustained Concentration and Persistence Limitations

- Moderate limitation in the ability to carry out detailed instructions.
- Moderate limitation in the ability to main attention and concentration for extended periods.
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

### Social Interaction Limitations

- Moderate limitation in the ability to interact appropriately with the general public.
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors.
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

AR 105–06.[9]

In Section III of the MRFCA (under the heading "Additional Explanation"), Dr.

Mendoza stated the following:

> Can understand and remember for simple and moderately detailed tasks.  Does not include executive type tasks.

> Can sustain CPP [Concentration, Persistence, and Pace] for above tasks, within above restrictions for periods of at least 2 hours at a time, throughout the day, to complete a normal workday/workweek, despite occasional interruptions from psychologically based symptoms.

> Can sustain occasional interactions with the public, coworkers and supervisors.

> Can adapt to routine workplace changes.

AR 106.

> The ALJ discussed Dr. Mendoza's opinion as follows:

> On reconsideration, non-examining state agency psychological consultant Ryan Mendoza found the claimant capable of a range of semi-skilled work with occasional social interactions.  This finding is consistent with the evidence and supported by an adequate explanation, and is given significant weight.

AR 20.  The ALJ ultimately concluded that Mr. Click had the mental RFC to

> perform more than simple but less than complex tasks consistent with semi-skilled work.  The claimant could interact with supervisors frequently and with coworkers and the public occasionally.  The claimant could tolerate few changes in a routine work setting.  Time off task could be accommodated by normal breaks.

AR 16.

---

[9] Dr. Mendoza also found Mr. Click had moderate adaptation limitations in his abilities to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others.  AR 105–06.  Mr. Click does not allege any errors in the ALJ's handling of these limitations.  *See* Doc. 22 at 5–11.

Dr. Mendoza encapsulated all of his Section I concentration, persistence, and pace limitations in his Section III narrative.[10]  In Section III, Dr. Mendoza explained that the moderate limitation in Mr. Click's ability to "carry out detailed instructions" noted in Section I meant that Mr. Click could understand and remember "simple and moderately detailed tasks," but could not do "executive type tasks."  AR 20.  Also in Section III, Dr. Mendoza explained that as long as Mr. Click was limited to these types of tasks, the other moderate limitations in concentration, persistence, and pace noted in Section I would not limit his ability to work.[11]  *Id*.  Dr. Mendoza's Section III narrative about concentration, persistence, and pace "does not contradict any Section I limitations and describes the effect each Section I limitation would have on the [Mr. Click's] mental RFC."  *Fulton*, 631 F. App'x at 502.  The ALJ therefore could rely only on Dr. Mendoza's Section III narrative related to Mr. Click's concentration, persistence, and pace limitations.  The ALJ did just that—finding that Mr. Click had the mental RFC to "perform more than simple but less than complex tasks consistent with semi-skilled work."  AR 16.

Dr. Mendoza's Section III narrative also adequately encapsulated his Section I limitations in the category of Social Interaction Limitations.  Dr. Mendoza explained in Section III that the

---

[10] The Commissioner argues that there is a blanket rule that the ALJ need only ever consider a doctor's Section III findings.  Doc. 26 at 13.  The Court does not agree with this assertion.  Nevertheless, in this case, because Dr. Mendoza's Section III narrative adequately encapsulated the moderate limitations he noted in Section I, the ALJ did not err in relying on Dr. Mendoza's Section III narrative.

[11] Mr. Click argues that Dr. Mendoza's Section III narrative does not encapsulate his Section I findings, but instead "directly contradicts the moderate limitations" contained in Section I.  Doc. 22 at 8–9.  The Court disagrees.  Dr. Mendoza stated that so long as Mr. Click was limited to simple or moderately detailed tasks, and was not required to do executive-type tasks, he could "sustain CPP [Concentration, Persistence, and Pace] **for [these] tasks** . . . for periods of at least 2 hours at [a] time . . . despite **occasional** interruptions from psychologically based symptoms." AR 106 (emphasis added).  This does not conflict with Dr. Mendoza's assessment that Mr. Click was only moderately limited in his abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms.  *See* AR 105.

moderate limitations in Mr. Click's abilities to interact with the public, coworkers and supervisors meant that Mr. Click could sustain only "occasional interactions with the public, coworkers and supervisors."  AR 106.  Dr. Mendoza's Section III narrative about social interaction limitations "does not contradict any Section I limitations and describes the effect each Section I limitation would have on the [Mr. Click's] mental RFC."  *Fulton*, 631 F. App'x at 502. The ALJ therefore could rely on Dr. Mendoza's Section III narrative related to Mr. Click's social interaction limitations.  Here, however, the ALJ only partially adopted Dr. Mendoza's Section III social interaction limitations:  the ALJ's RFC limited Mr. Click to occasional interactions with coworkers and the public, consistent with Dr. Mendoza's Section III narrative.  AR 16.  But while Dr. Mendoza concluded that Mr. Click could have only "occasional" interactions with supervisors, AR 106, the ALJ, without explanation, found that Mr. Click could "frequently interact with supervisors."  AR 16.

The Commissioner argues that the ALJ's failure to either adopt or explain why he rejected the limitation to "occasional" interaction with supervisors contained in Section III of Dr. Mendoza's opinion is harmless error.  Doc. 26 at 17.  The Commissioner argues that the jobs the ALJ found Mr. Click could do at Step 5 do not require more than occasional interaction with supervisors.  *Id*.  She argues that this renders harmless the ALJ's failure to limit Mr. Click's RFC to only occasional interaction with supervisors.  *Id*.  The Court agrees.

The case cited by the Commissioner in support of this argument is persuasive.  In *Lane v. Colvin*, a non-examining state agency doctor opined that the claimant could only "accept supervision . . . as long as contact is not frequent or prolonged."  643 F. App'x 766, 768 (10th Cir. 2016) (unpublished) (internal quotation omitted).  The ALJ gave the state agency doctor's opinion "substantial weight" but neither included a limitation in the ability to interact with

supervisors in claimant's RFC nor expressly rejected this limitation.  *Id*.  The *Lane* court found

this error to be harmless because the job the ALJ found claimant capable of performing at step

five did not involve frequent or prolonged contact with supervisors.  *Id*. at 769–70.  Specifically,

the court found the Dictionary of Occupational Titles ("DOT") job definition for "bottling line

attendant" required only superficial contact with supervisors because the amount of interaction

with people required was an 8 on a 0–8 scale where 8 is the "lowest possible level of interaction

that exists in the labor force," the amount of "taking instructions" was "not significant," and the

activity of talking was "not present."  *Id*. at 770 & n.1.

In Mr. Click's case, as in *Lane*, the ALJ gave Dr. Mendoza's opinion significant weight,

but neither included a limitation in the ability to interact with supervisors in Mr. Click's RFC nor

expressly rejected this limitation.  Also, as in *Lane*, the jobs the ALJ found Mr. Click capable of

performing at step five do not involve frequent or prolonged contact with supervisors.  The ALJ

found Mr. Click capable of the following jobs:  cook helper (DOT 317.687-010), coffee maker

(DOT 317.684-010), production helper (DOT 529.686-070), and laundry laborer (DOT 361.687-

018).  AR 24–25.  The DOT definition for each of these jobs, like those in *Lane*, lists the amount

of interaction with people required as an 8 on a 0–8 scale where 8 is the "lowest possible level of

interaction that exists in the labor force," the amount of "taking instructions" is "not significant,"

and the activity of talking is "not present."  *See Dictionary of Occupational Titles*, DICOT, 1991

WL 672752 (317.687-010, 317.684-010, 529.686-070, and 361.687-018).  Thus, *Lane* is directly

on point.  Because the Court finds *Lane* persuasive, the Court finds that the ALJ's error in failing

to either include or explain why he rejected a limitation to "occasional" interactions with

supervisors to be harmless.  Incorporating Dr. Mendoza's limitation to occasional interactions

with supervisors into the RFC would not have helped Mr. Click because he still would have been

found capable of performing other significant work in the national economy at step five.  *See*

*Keyes-Zachary*, 695 F.3d at 1162–63 (error in failing to explain the weight given to a medical

opinion did not prejudice the claimant because giving greater weight to the opinion "would not

have helped her").

### B.  The ALJ did not err in evaluating the opinions of Dr. Krueger.

Mr. Click argues that the ALJ erred in giving the 2015 opinion of consultative examiner

Dr. Krueger "little weight" because—while "the ALJ gave many reasons for discounting the

opinion"—"none are supported by substantial evidence and the explanation is riddled with

mischaracterization and legal error."  Doc. 22 at 15.  Mr. Click then challenges seven of the

specific reasons the ALJ gave for giving the Dr. Krueger's opinion "little weight."  *Id*. at 15–23.

The Commissioner counters that the ALJ reasonably discounted Dr. Krueger's opinions.  Doc.

26 at 18.  The Commissioner argues that most of Mr. Click's arguments "ask the Court to act as

the factfinder and reweigh the evidence, an invitation the Court should decline under the

substantial evidence standard of review."  *Id.*  The Court agrees with the Commissioner.

An ALJ must consider six factors in deciding what weight to give a medical source

opinion:

1.  **Examining relationship**:  more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2.  **Treatment relationship**:  more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3.  **Supportability:**  more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4.  **Consistency:**  the more consistent the opinion is with the record as a whole, the more weight it should be given;
5.  **Specialization**:  more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6.  **Other factors:**  any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. § 404.1527(c)(1)–(6); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  The ALJ need not explicitly discuss every factor for each opinion.  *Oldham*, 509 F.3d at 1258.

The ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003)).  If rejecting a medical opinion, the ALJ must "provide specific, legitimate reasons for rejecting it."  *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citations omitted).  Giving an opinion "little weight" is the same as rejecting the opinion.  *Chapo,* 682 F.3d at 1291.

Dr. Krueger examined Mr. Click on December 22, 2015, after he was referred for a consultative examination by Disability Determination Services.  AR 514.  Dr. Krueger conducted a clinical interview and an examination, administered the Beck Depression Inventory, which showed "significant problems with depression," and diagnosed Mr. Click with bipolar I disorder, which he characterized as "rapid cycling."  AR 514–17.  Dr. Krueger assessed Mr. Click's GAF ("Global Assessment of Functioning") as 60 on a "good day" and 35 on a "bad day."  AR 517. Finally, Dr. Krueger opined that

> Mr. Click does have significant functional impairment.  He has impairments related to having bipolar I disorder and also impairments related to his migraines.  Mr. Click does have the intellectual ability to understand and remember simple work instructions with little or no impairment and complex or detailed instructions with perhaps mild impairment; however, during episodes of severe mood swings and/or migraines he is likely to have marked impairment with following work instructions.  Mr. Click can be expected to have marked impairment with maintaining pace and persistence.  Almost all of his formal work experience has been computer-related, and he stated that he can work in front of the computer screen for only about 45 minutes now.  In his current condition, he can be expected to have marked impairment with adjusting to changes in work environment.  Because of his mood swing problem and irritability Mr. Click can be expected to have marked impairment in many relationships with coworkers, supervisors,

and the general public.  At times he can be expected to have marked impairment with traveling to distant places alone.  Mr. Click can be expected to have mild to moderate impairment with being aware of and reacting appropriately to dangers in many work environments, but during acute exacerbations of his bipolar disorder or during episodes of migraines he may be markedly impaired in this area.

AR 517.

The ALJ provided a thorough and reasoned discussion of the weight he gave Dr.

Krueger's opinion, and the reasons he discounted the limitations in the opinion:

I accord little weight to the opinion of consultative psychologist Dr. Krueger as set out in the report of his December 22, 2015 evaluation (Exhibit 5F).  Dr. Krueger opined the claimant would have the intellectual ability to understand and remember simple work instructions with little or no impairment and complex or detailed instructions with perhaps mild impairment; however, during episodes of severe mood swings and/or migraines he was likely to have marked impairment with following work instructions.  Dr. Krueger's opinion is not supported by his clinical findings and is inconsistent with the claimant's ability to perform[] skilled work at SGA level for many years before this examination and to return to it afterwards.  On examination, Dr. Krueger reported the claimant was a very well educated man and was most likely of above average intelligence, and that he saw no evidence of a major cognitive disorder on examination (Exhibit 5F/5).  Dr. Krueger opined that because of mood swings and irritability, the claimant would have marked impairment in many relationships with co-workers, supervisors, and the general public.  This level of impairment is not supported by his examination, which showed the claimant was well oriented and cooperative (Exhibit 5F/4).  This opinion is also inconsistent with the claimant's ability to work for many years at well above SGA level, and return to SGA level work in August 2017.  This work history indicates he has adequate social skills to maintain employment.  Moreover, his past and current jobs as a college professor in particular require significant social interaction.

Dr. Krueger further opined the claimant would have marked impairment with maintaining pace and persistence, but Dr. Krueger attributed this limitation in part to the claimant's allegation that he could work in front of the computer screen for only about 45 minutes due to exacerbation of migraines.  Thus, this limitation was partly based on a physical condition, not mental, and it was based on the claimant's subjective allegation.  Dr. Krueger described generally benign clinical findings (neatly groomed, well oriented, cooperative) that do not support his opinion of marked limitation.  As discussed above, the claimant was able to perform skilled work for many years at well above SGA level, and return to skilled, SGA level work in August 2017.

Dr. Krueger also opined the claimant could be expected to have marked impairment with adjusting to changes in work environment (Exhibit 5F/5).  In addition, Dr. Krueger opined at times the claimant could be expected to have marked impairment with traveling to distant places alone.  Dr. Krueger apparently based the impairment in travel on the claimant's report that he could not drive when he had a migraine, which is not a mental impairment.  Dr. Krueger's relatively benign clinical findings do not support a marked limitation.  Dr. Krueger's opinion of marked limitation is also inconsistent with the claimant's ability to perform skilled SGA level work both before and after Dr. Krueger's evaluation.  During 2015, the claimant saw a psychiatrist infrequently, was not on any long-term psychotropic medication, and did not require inpatient psychiatric care; thus, the medical evidence does not show an acute exacerbation of bipolar prior to the DLI.  Moreover, the claimant testified that his condition worsened after he returned to work in August 2017, and yet he has continued to perform SGA level skilled work as of February 2020.

AR 20–21.  In addition to providing this detailed explanation of why he rejected Dr. Krueger's

opinion, the ALJ provided a detailed explanation of the basis for his RFC findings:

In summary, the claimant testified that the primary conditions that prevent him from working are bipolar disorder and migraines.  However, both conditions are longstanding, and they did not prevent him from working for many years in the past as a college instructor and software app developer, or from returning to work in August 2017 as a college instructor.  His current work as a college instructor is skilled work and requires significant social interaction.  Medical and other evidence does not establish any acute exacerbation of either his mental or physical condition in 2015, prior to the DLI.  Moreover, at both the previous and current hearing, the claimant testified that his conditions got worse after the alleged closed period, after he started working, and even Dr. Krueger, whose opinion I give little weight, said claimant had gotten worse since 2015.  And yet, he is able to work earning well above SGA level at a skilled job as a college professor, with significant social interaction.  In my RFC, I have provided for moderate concentration, persistence, and pace limitations by limiting the claimant to semi-skilled work (more than simple but less than complex tasks), less social interaction (no more than frequent interaction with supervisors and occasional with coworkers and the public), and few changes in a routine work setting, all of which address concentration, persistence, and pace problems with few changes, less distraction from others, and simpler work.  In addition, I have taken into consideration his allegation that use of a computer can aggravate migraines by limiting him to frequent (rather than constant) use of a computer.  Again, at hearing, claimant reiterated that his conditions got worse after he started back to work in 2017 and did not start to improve until the middle of 2018.  He testified he is still working and doing better now.

AR 23.

The ALJ's detailed explanation of why he gave Dr. Krueger's opinion "little weight" is free from legal error and supported by substantial evidence.  The ALJ explained the weight he gave Dr. Krueger's opinion, and "provide[d] specific, legitimate reasons" for that weight.  *See Krauser*, 638 F.3d 1330; *Doyal*, 331 F.3d at 764.  Nothing more is required.  Mr. Click invites the Court to reweigh the evidence.  But the Court may not do so under substantial evidence review.  *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citation and quotation omitted).

Mr. Click takes umbrage with the Commissioner's claim that he is asking the Court to reweigh the evidence.  Doc. 27 at 8–9.  Instead, Mr. Click claims that his arguments are "based primarily on legal error, as well as on substantial evidence."  *Id*.  The Court has thoroughly reviewed Mr. Click's seven specific sub-claims but is not persuaded that the ALJ committed any legal error.

First, Mr. Click takes issue with the ALJ's finding that Dr. Krueger's opinion is unsupported by his clinical findings.  Doc. 22 at 15 (citing AR 21).  Mr. Click argues that Dr. Krueger's opinion is supported by his clinical findings.  *Id*.  He argues that the opinion is supported by Dr. Krueger's findings that he showed evidence of having bipolar I disorder and depression, including an elevated score on the Beck Depression Inventory.  *Id*. (citing AR 516).  He also points to Dr. Krueger's observation that he had "a quality of tension and mild irritability in his speech."  *Id*.  Finally, he points to the fact that Dr. Krueger reviewed treatment records from his treating psychiatrist Dr. Franklin, and Dr. Franklin's records showed a diagnosis of

bipolar II disorder, restricted affect, a high score on a Mood Disorder Questionnaire, and a GAF

of 40. Doc. 22 at 15–16. Mr. Click, however, offers no explanation of how these clinical

findings support the moderate and marked limitations in Dr. Krueger's opinion. The ALJ

considered Mr. Click's bipolar disorder, anxiety, and depression throughout the sequential

evaluation process, and in formulating Mr. Click's RFC. And the ALJ thoroughly discussed Mr.

Click's treatment records from Dr. Franklin. AR 17. Finally, the ALJ gave numerous reasons

why he found Dr. Krueger's opinion to be unsupported by his clinical findings, which Mr. Click

does not address in urging the Court to find Dr. Krueger's opinion was supported. For these

reasons, the Court is not persuaded that the ALJ erred in finding Dr. Krueger's opinion was

unsupported by his clinical findings.

      Second, Mr. Click argues that the ALJ erred in using his work history to discount Dr.

Krueger's opinions. Doc. 22 at 16–17. The Commissioner argues that "it was permissible for

the ALJ to find that Dr. Krueger's marked limitations in mental functioning were inconsistent

with his ability to return to skilled work with significant social interaction soon after the date last

insured"("DLI"). Doc. 26 at 20. The Court agrees with the Commissioner. The ALJ provided a

detailed explanation of why he found Mr. Click's work history did not support greater limitations

than those included in the RFC:

> In summary, the claimant testified that the primary conditions that prevent him
> from working are bipolar disorder and migraines. However, both conditions are
> longstanding, and they did not prevent him from working for many years in the
> past as a college instructor and software app developer, or from returning to work
> in August 2017 as a college instructor. His current work as a college instructor is
> skilled work and requires significant social interaction. Medical and other
> evidence does not establish any acute exacerbation of either his mental or physical
> condition in 2015, prior to the DLI. Moreover, at both the previous and current
> hearing, the claimant testified that his conditions got worse after the alleged
> closed period, after he started working, and even Dr. Krueger, whose opinion I
> give little weight, said claimant had gotten worse since 2015. And yet, he is able

to work earning well above SGA level at a skilled job as a college professor, with significant social interaction.

AR 23.  In order to show that he was entitled to disability benefits in this case, Mr. Click had to demonstrate that he was disabled between his alleged onset date of April 15, 2015, and his DLI of December 31, 2015.  AR 12–13.  The ALJ reasonably noted that Mr. Click worked for many years both before and after the relevant time period with bipolar disorder and migraines, and that Mr. Click failed to show any acute exacerbations in his conditions during the relevant time period that would render him as limited as Dr. Krueger opined.  Finally, the ALJ pointed out that Mr. Click testified, and Dr. Krueger opined, that Mr. Click's condition deteriorated after 2015. But despite this deterioration, Mr. Click still was able to work as a college professor.  The ALJ's reasoning was well-articulated; the ALJ committed no error in relying on Mr. Click's work history to discount the limitations in Dr. Krueger's opinion.[12]

Third, Mr. Click faults the ALJ for citing Dr. Krueger's finding that he "was a very well [-]educated man and was most likely of above average intelligence."  Doc. 22 at 18 (citing AR 21).  Mr. Click argues this was error because "Dr. Krueger did not opine that My Click had a major cognitive disorder."  *Id*.  Instead, he argues, any limitations in understanding,

---

[12] Mr. Click argues that it is legally incongruent for the ALJ to reject Dr. Krueger's opinion on the basis that it conflicts with his past relevant work while simultaneously finding that he was unable to perform his past relevant work at step four.  Doc. 22 at 17.  The Court does not see this as incongruent.  The ALJ discounted the numerous marked and moderate impairments in Dr. Krueger's opinion based *in part* on his work history.  This rejection of the limitations in Dr. Krueger's opinion, however, does not mean the ALJ found Mr. Click had *no* limitations during the relevant time period.  The ALJ used Mr. Click's work history to show that he was not as limited as Dr. Krueger opined, not to show that he could have done the same jobs during the relevant time period.  The Court does not find the case cited by Mr. Click, *Romero v. Colvin*, No. 14cv1018 SCY, Doc. 29 (D.N.M. Mar. 28, 2016), persuasive.  In that case, the *only* reason the ALJ gave for discounting a treating physician's opinion was that the claimant worked as "an unpaid sheepherder for his family and as a part time bus driver.*"  Id.* at 11.  In contrast, the ALJ in this case gave several detailed and well-supported reasons for discounting Dr. Krueger's opinion.

remembering, and following instructions in Dr. Krueger's opinion were related to his "severe mood swings and/or migraines." *Id.* The Court acknowledges that Dr. Krueger opined that "during episodes of severe mood swings and/or migraines [Mr. Click] is likely to have marked impairment with following work instructions." AR 517. But the ALJ discounted this limitation on two independent bases: (1) his opinion was not supported by his clinical findings and (2) his opinion "is inconsistent with the claimant's ability to perform skilled work at SGA level for many years before this examination and to return to it afterwards." *Id*. As proof that his opinion is not supported by his clinical findings, the ALJ stated, "On examination, Dr. Krueger reported the claimant was a very well educated man and was most likely of above average intelligence, and that he saw no evidence of a major cognitive disorder on examination (Exhibit 5F/5)." AR 21. The Court does not find this reason legally erroneous. A lack of a cognitive disorder is relevant to the ALJ's analysis.[13] And while this reason alone is legally insufficient to completely discount Dr. Krueger's limitation in following work instructions (which were based on migraines and mood disorders), this is not the only reason the ALJ gave for discounting the limitation. The ALJ also discounted this limitation because it was inconsistent with Mr. Click's "ability to perform[] skilled work at SGA level for many years before this examination and to return to it afterwards." AR 21. The ALJ committed no legal error in discounting this limitation, and the ALJ's explanation of why he did not credit this limitation is supported by substantial evidence.

Fourth, Mr. Click argues that it was legal error for the ALJ to discount the marked limitation Dr. Krueger found in his ability to interact with co-workers, supervisors and the

---

[13] Mr. Click also argues that he later scored only a 74 in Processing Speed Index, showing delayed processing speeds. Doc. 22 at 18 (citing AR 729). However, as the Commissioner points out, this test was administered in 2019, and sheds little light on his limitations during the relevant time period in 2015. *See* Doc. 26 at 19.

general public on the basis that "[t]his level of impairment is not supported by his examination, which showed the claimant was well oriented and cooperative."  Doc. 22 at 19 (citing AR 21). The Court does not agree.  Viewed as a whole, the ALJ accurately summarized Dr. Krueger's opinion about his ability to interact with others in the workplace, and gave valid reasons supported by substantial evidence for discounting Dr. Krueger's opinion in this area:

> Dr. Krueger opined that because of mood swings and irritability, the claimant would have marked impairment in many relationships with co-workers, supervisors, and the general public.  This level of impairment is not supported by his examination, which showed the claimant was well oriented and cooperative (Exhibit 5F/4).  This opinion is also inconsistent with the claimant's ability to work for many years at well above SGA level, and return to SGA level work in August 2017.  This work history indicates he has adequate social skills to maintain employment.  Moreover, his past and current jobs as a college professor in particular require significant social interaction.

AR 21.[14]  In other words, the ALJ relied heavily on Mr. Click's demonstrated ability to interact with others both before and after the relevant period—not just that he was well oriented and cooperative during his examination—in discounting Dr. Krueger's opinion that Mr. Click was markedly limited in his ability to work with others.

Fifth, Mr. Click argues that the ALJ erred in stating that the marked limitation Dr. Krueger assessed in his ability to maintain "pace and persistence" was "partly based on a physical condition, not mental."  Doc. 22 at 20.  He asserts that "Dr. Krueger's mention of migraines is not a valid reason to discount his opinion" because migraines and

---

[14] Mr. Click argues that the ALJ did not discuss evidence that would support a greater level of social interaction limitation.  Doc. 22 at 19–20.  This evidence includes the fact that Dr. Krueger found he had mood swings/fluctuations, irritability, "tension and mild irritability" in his speech, and diagnosed him with bipolar disorder.  *Id*.  The Court does not agree.  The ALJ fully and accurately summarized and discussed Dr. Krueger's opinion, findings, and diagnoses at step two, step three, and in assessing Mr. Click's RFC.  The Court is not persuaded that the ALJ failed to discuss any "uncontroverted evidence he cho[]se[] not to rely upon" or any "significantly probative evidence he reject[ed]."  *See Clifton v. Chater*, 79 F.3d at 1010.

psychological conditions can be interrelated.  *Id*.  Dr. Krueger opined that "Mr. Click can

be expected to have marked impairment with maintaining pace and persistence.  Almost

all of his formal work experience has been computer-related, and he stated that he can

work in front of the computer screen for only about 45 minutes now."  AR 517.  Mr.

Click argues that there is a "potential" association between Mr. Click's migraines and his

psychological conditions, but he does not cite anything in Dr. Krueger's opinion or the

record supporting an actual association between these conditions for Mr. Click.  This is

insufficient to show any legal error in this case.  In addition, the ALJ gave a detailed and

supported rationale for discounting the pace and persistence limitations in Dr. Krueger's

opinion:

> Dr. Krueger further opined the claimant would have marked impairment with
> maintaining pace and persistence, but Dr. Krueger attributed this limitation in part
> to the claimant's allegation that he could work in front of the computer screen for
> only about 45 minutes due to exacerbation of migraines.  Thus, this limitation was
> partly based on a physical condition, not mental, and it was based on the
> claimant's subjective allegation.  Dr. Krueger described generally benign clinical
> findings (neatly groomed, well oriented, cooperative) that do not support his
> opinion of marked limitation.  As discussed above, the claimant was able to
> perform skilled work for many years at well above SGA level, and return to
> skilled, SGA level work in August 2017.

AR 21.  Finally, the Court notes that the ALJ provided an exhaustive analysis of the

evidence of record and limitations connected to Mr. Click's migraine headaches.  AR 18–

19.

Sixth, Mr. Click argues that the ALJ erred in finding "Dr. Krueger's limitations to

be based on Mr. Click's subjective complaints."  Doc. 22 at 21.  He argues that "[t]he

practice of psychology is necessarily dependent, at least in part, on a patient's subjective

statements," and that "[a] psychological opinion need not be based on solely objective

tests; those findings may rest either on observed signs and symptoms or on psychological

tests." *Id.* (citing *Thomas v. Barnhart*, 147 F. App'x. 755, 759 (10th Cir. 2005) (unpublished)).  The ALJ referenced subjective complaints only in connection with discounting the marked limitation Dr. Krueger found in Mr. Click's ability to maintain pace and persistence:

> Dr. Krueger further opined the claimant would have marked impairment with maintaining pace and persistence, but Dr. Krueger attributed this limitation in part to the claimant's allegation that he could work in front of the computer screen for only about 45 minutes due to exacerbation of migraines.  Thus, this limitation was partly based on a physical condition, not mental, and it was based on the claimant's subjective allegation.

AR 21.  The Court does not find any error in the ALJ stating that Mr. Click's limitations in maintaining pace and persistence were based on his subjective complaints.  Dr. Krueger's opinion stated that "Mr. Click can be expected to have a marked impairment with maintaining pace and persistence.  Almost all of his formal work experience has been computer-related, and he stated that he can work in front of the computer screen for about 45 minutes now."  AR 517.  Dr. Krueger did not independently assess Mr. Click's migraine headaches, but instead relied on Mr. Click's subjective report of his limitations related to his migraine headaches.  *See* AR 514–18; *see also* AR 517 ("Mr. Click reported having frequent migraine headaches").  Given these facts, the Court finds the ALJ's statement that Dr. Krueger's limitation in pace and persistence were based on subjective allegations is factually accurate and does not constitute legal error.

Seventh, Mr. Click argues that the ALJ's finding that he did not show an acute exacerbation of bipolar disorder prior to his date last insured is unsupported.  Doc. 22 at 22–23.  The ALJ found that "[d]uring 2015, the claimant saw a psychiatrist infrequently, was not on any long-term psychotropic medication, and did not require inpatient psychiatric care; thus, the medical evidence does not show an acute exacerbation of bipolar prior to the DLI."  AR 21.  Mr. Click attacks this statement for three reasons, none of which have merit.  First, Mr. Click argues

that "whether a claimant is receiving treatment for a mental impairment is not a legitimate factor in assessing an examining physician's opinions." Doc. 22 at 22. Mr. Click does not cite any controlling law for this assertion, and the unpublished case he cites, *Grotendorst v. Astrue,* 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished), is not persuasive. *Id*. Second, Mr. Click argues that the ALJ did not consider the reason he was not on long-term psychotropic medications, which he asserts was due to medication side effects. *Id*. However, the ALJ adequately considered Mr. Click's side effects from his medications. AR 17 ("He was on a lot of medications that did not help much. Side effects from medications included nausea, increased anxiety, or sluggishness."); AR 17 (noting that Dr. Franklin started him on Abilify "but he stopped taking it due to adverse side effects"); AR 17 (noting that Dr. Franklin advised him to "return as needed for a possible trial of another mood stabilizer"); AR 17 (noting that Mr. Click saw Dr. Franklin infrequently and did not return for the trial of another mood stabilizer). Third, Mr. Click asserts that "[t]he absence of evidence is not evidence." Doc. 22 at 22. Mr. Click, however, has the burden of proof in the first four steps of the sequential evaluation process. *See Bowen*, 482 U.S. at 146. Thus, a lack of evidence shows that Mr. Click has failed to meet his burden of proof.[15] The ALJ's finding that Mr. Click did not show an acute exacerbation of bipolar disorder prior to his date last insured is free from legal error and supported by substantial evidence.

Finally, Mr. Click argues that the ALJ erred in evaluating a second opinion from Dr. Krueger by giving legally insufficient reasons for discounting his opinion. Doc. 22 at 23–25. Dr. Krueger examined Mr. Click for a second time on February 1, 2019, at the recommendation

---

[15] Mr. Click again argues that "[t]he care Mr. Click did receive prior to the DLI supported Dr. Krueger's opinion." Doc. 22 at 22. The Court already has addressed this argument. *See supra* at 18–19.

of his attorney.  AR 720–21.  Dr. Krueger conducted a clinical interview, reviewed treatment records, administered psychological testing, and completed a written report and medical source statements.  AR 721–43.  Dr. Krueger completed a Medical Assessment of Ability to do Work-Related Activities (Mental) wherein he opined that Mr. Click had several moderate and marked limitations.  AR 736–37.  In this opinion, Dr. Krueger noted that Mr. Click now had "severe psychiatric disorders including Bipolar I disorder and severe PTSD," as well as "some issues [with] cognitive functioning."  AR 736.  Mr. Click reported "some major developments in his life since he was previously evaluated" on December 22, 2015—including being the victim of a home invasion in 2016, which caused him to develop severe PTSD.  AR 723.  Dr. Krueger noted that Mr. Click was "at a lower level of adaptive functioning" than when he had examined him in 2015, and that "his psychological condition ha[d] deteriorated since then, probably related to his traumatic assault."  AR 730.

The ALJ weighed Dr. Krueger's second opinion as follows:

> The claimant's attorney sent him to Dr. Krueger for a second evaluation on February 1, 2019, over three years after his DLI and over a year after he resumed skilled SGA work (Exhibit 27F).  I give little weight to Dr. Krueger's opinion from this second evaluation, as it is not well supported by the objective evidence in the file and is contrary to the claimant's ongoing ability to perform skilled, interactive work (Exhibit 27F).  In addition, the claimant's interview with Dr. Krueger at this second evaluation primarily concerned his reaction to a home invasion that occurred in September 2016, well after the DLI (Exhibit 27F/7).

AR 21.

The Court sees no error in the ALJ's treatment of Dr. Krueger's February 1, 2019, opinion.  The ALJ thoroughly discussed Dr. Krueger's December 22, 2015, opinion, and the reasons he discounted the limitations contained in that opinion.  Dr. Krueger's 2015 opinion was written ten days before Mr. Click's date last insured of December 31, 2015.  Thus, this opinion was written during the relevant time period, and is about the relevant time period.  Dr. Krueger's

2019 evaluation was done to "obtain information about his **current** cognitive/emotional/behavioral function," AR 723 (emphasis added), and this opinion addressed the period "from 2015 to **current** examination." AR 736. Given that the ALJ thoroughly explained why he discounted Dr. Krueger's 2015 opinion, the fact that Mr. Click's level of psychological functioning declined after the relevant time period, and the fact that Dr. Krueger's 2019 opinion assessed his level of functioning at that time, the Court perceives no error in the ALJ's discussion of this opinion.

## VI. Conclusion

For the reasons stated above, the Court finds that the ALJ applied the correct legal standards, and his decision is supported by substantial evidence. None of Mr. Click's arguments have merit.

IT IS THEREFORE ORDERED that Mr. Click's Motion to Reverse and Remand for a Rehearing (Doc. 22) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED, and this case is dismissed with prejudice.

Laura Fashing
United States Magistrate Judge
Presiding by Consent